UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ESLI D. B.G.,<br><br>Plaintiff,<br><br>vs.<br><br>PAMELA JO BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES; KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID EASTERWOOD, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR, ST. PAUL FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; AND BRIAN C. DEAN, IN HIS OFFICIAL CAPACITY AS SHERIFF OF LAWRENCE COUNTY;<br><br>Defendants. | 5:26-CV-05020-RAL<br><br><br>OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS AND ORDERING RELEASE |

Petitioner Esli D. B.G. filed a Writ of Habeas Corpus, Doc. 1, seeking his immediate release from federal immigration detention. Respondents oppose the Petition. Doc. 8.[1] This Court

---

[1] On March 9, 2026, Respondents filed a Supplemental Answer to the Petition questioning federal subject matter jurisdiction but then provided notice that the supplemental response was filed in error and should be disregarded. See Doc. 10. Although Respondents do not appear to challenge subject matter jurisdiction or administrative exhaustion, this Court briefly addresses these issues. None of the jurisdiction-stripping provisions of 8 U.S.C. § 1252 apply to the question of whether Esli D. B.G. is subject to mandatory detention under § 1225(b)(2) or discretionary detention under

1

entered a temporary restraining order to enjoin removing Esli D. B.G. from detention in the District of South Dakota for 14 days while the parties briefed the legal issue of the propriety of his detention. Because the detention of Esli D. B.G. falls under the provisions of 8 U.S.C. § 1226(a) and he was arrested without a warrant, the Petition is granted, and he is entitled to immediate release.

## I.    Background

Esli D. B.G. is a resident of Dickinson, North Dakota, and a citizen of Mexico. Doc. 1 ¶ 42. He has resided in the United States continuously since he entered without inspection in November 2005. Id.; Doc. 9 ¶ 6; Doc. 9-1 at 1. Esli D. B.G. lives with his U.S. citizen wife and five U.S. citizen children, ages 5, 9, 13, 16, and 25, four of whom are biological children and one of whom is a stepchild. Doc. 1 ¶ 43. According to his Petition, Esli D. B.G. has strong ties to the Dickinson community, has one child with non-verbal autism, and provides his family with emotional, physical, and financial support. Id. In his more than 20 years in the United States, Esli D. B.G. has no criminal history. Doc. 9-1 at 2.

On September 4, 2025, in or around Dickinson, North Dakota, Immigration and Customs Enforcement (ICE) agents arrested Esli D. B.G. without a warrant. Doc. 1 ¶ 44. ICE agents encountered Esli D. B.G. at a construction site where they were searching for a previously deported noncitizen. Id. Agents transported Esli D. B.G. to the Burleigh County Detention Center in North

---

§ 1226(a). See Maldonado v. Olson, 795 F. Supp. 3d 1134, 1142–47 (D. Minn. 2025). As to exhaustion, requiring administrative exhaustion would be futile in light of Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). See Ortiz v. Freden, 808 F. Supp. 3d 579, 590 (W.D.N.Y. 2025) (finding exhaustion of remedies would be futile, even if petitioner had not exhausted his remedies). Immigration judges would be obliged to follow Hurtado's ruling on the scope of § 1225(b)(2)(A). See Ortiz, 808 F. Supp. 3d at 590.

Dakota and issued a Notice to Appear (I-862) charging removability under sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA). Doc. 9 ¶ 8.

On September 25, 2025, Esli D. B.G. filed an Application to Register Permanent Resident or Adjust Status (Form I-485) with United States Citizenship and Immigration Services. Id. ¶ 10. On October 30, 2025, an immigration judge ordered Esli D. B.G. removed to Mexico and denied Cancellation of Removal under INA section 240A(b)(1). Id. ¶ 11. On November 19, 2025, Esli D. B.G. appealed to the Board of Immigration Appeals (BIA), which is still pending as of the time of this Order. Id. ¶ 12. Esli D. B.G. is currently detained at the Lawrence County Jail in Deadwood, South Dakota, where he has been held for over six months without a final removal order pending his appeal to the BIA. Doc. 1 ¶ 45.

On February 27, 2026, Esli D. B.G. filed the instant Petition, asserting that he is entitled to immediate release because he was arrested and detained without a warrant. Id. ¶¶ 69–73. Esli D. B.G. also requested that this Court enjoin Respondents from moving him outside this District pending adjudication of his Petition. Id. at 21.

On March 2, 2026, this Court enjoined for fourteen days Esli D. B.G.'s removal or transfer outside of the District of South Dakota until further order of the Court so that Esli D. B.G. could consult with his counsel during the pendency of his Petition, and so there is no risk that his removal would deprive this Court of jurisdiction over his Petition. Doc. 2. This Court ordered that Respondents address (1) Respondents' view as to whether—and if so, why—this matter is materially distinguishable, either factually or legally, from what the District of Minnesota[2] considers its in-district lead case: Santos M.C. v. Olson, No. 25-CV-4264, 2025 WL 3281787 (D.

---

[2] "Operation Metro Surge" in Minnesota spawned many cases similar to this one, so this Court tailored its order from what has become a template order in the District of Minnesota.

3

Minn. Nov. 25, 2025); and (2) whether the absence of a warrant preceding Esli D. B.G.'s arrest necessitates his immediate release under the analysis of Ahmed M. v. Bondi, No. 25-cv-4711, 2026 WL 25627 (D. Minn. Jan. 5, 2026). Id. at 3–4.

In their Response to the Petition, Respondents assert that Esli D. B.G. is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore is not entitled to release under 8 U.S.C. § 1226(a). This position is consistent with the change in July of 2025 in interim guidance from the Department of Homeland Security (DHS) and ICE as well as a subsequent decision from the BIA finding that all person who enter the United States without inspection, including persons who have resided here for long periods of time like Esli D. B.G., are "applicants for admission" under 8 U.S.C. § 1225(a), subject to mandatory detention, rather than discretionary detention under § 1226(a). See Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025); Maldonado v. Olson, 795 F. Supp. 3d 1134, 1150 (D. Minn. 2025) (noting new interim guidance and discussing historical treatment of noncitizens residing in the United States and interpretations of §§ 1225 and 1226). Respondents cite the application of their statutory interpretation of § 1225(b)(2)(A) in the recent United States Court of Appeals for the Fifth Circuit case, Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026). Doc. 8 at 4. Respondents also urge this Court to find that Esli D. B.G.'s substantive due process argument is without merit. Id. at 9–10 (citing Miranda v. Garland, 34 F.4th 338 (4th Cir. 2022) (reversing grant of preliminary injunction after finding that the detention procedures adopted for § 1226(a) bond hearings provide sufficient process to satisfy constitutional requirements); Demore v. Kim, 538 U.S. 510 (2003) (reviewing a due process challenge to § 1226(c)).

This Court had asked Respondents to respond if this case differed from Santos M.C. and Ahmed M. Doc. 2 at 3–4. Respondents concede that the instant case is not factually

4

distinguishable from Santos M.C. v. Olson, No. 25-CV-4264, 2025 WL 3281787, but still argue that "this case is *legally* distinguishable because *Santos M.C.* relies on a flawed construction of the INA." Id. at 5. They also mistakenly cite a District of Minnesota case they assert "explicitly rejected the reasoning of cases like *Santos M.C.*" to refute Esli D. B.G.'s argument that the District of Minnesota has repeatedly ruled in favor of granting discretionary bond under 8 U.S.C. § 1226(a).[3] Id. at 7 (citing Duran v. Bondi, No. 0:26-cv-00402-JRT-DJF, slip op. at 4 (D. Minn. 2026)). The case citation provided by the Respondents is not for Duran v. Bondi, but rather for Daniel P. v. Noem, No. 0:26-cv-00402-MJD-DTS, where the court *granted* the petition after finding that respondents were enjoined from denying the petitioner a bond hearing on the basis that § 1225(b)(2) applied to him and where the petitioner was ultimately released from custody. See Daniel P. v. Noem, Case No. 0:26-cv-00402-MJD-DTS, Docs. 12, 15. Respondents probably meant to cite Humberto Geovani D.A. v. Bondi, No. 0:26-cv-01597-DMT-SGE (D. Minn.), where Judge Daniel Mack Traynor sitting by designation in the District of Minnesota followed the Fifth Circuit decision in Buenrostro-Mendez, rather than decide the questions as all other active district judges in Minnesota or sitting by designation in Minnesota have ruled. See Humberto Geovani D.A. v. Bondi, No. 0:26-cv-01597-DMT-SGE, Doc. 8 at 4 (D. Minn. Mar. 4, 2026) (citing Buenrostro-Mendez, 166 F.4th 494). But see Santos M.C., 2025 WL 3281787, at *2–3 (Schiltz, C.J.); Jose J.O.E. v. Bondi, 797 F. Supp. 3d 957, 969–70 (D. Minn. 2025) (Tostrud, J.); Andres

---

[3] Esli D. B.G. in his Petition clearly requests immediate release and not a bond hearing, and in this paragraph cited by the Respondents in their Response, Esli D. B.G. relied on Ahmed M. v. Bondi, No. 25-cv-4711, 2026 WL 25627, to support the assertion that "courts across the United States," including in the District of Minnesota, "have overwhelmingly concluded that noncitizens like [Esli D. B.G.] who entered the United States without inspected and are detained by ICE for removal proceedings while they are residing in the United States are not detained under § 1225(b)(2)(A)." Doc. 1 ¶ 59. At the time of the Ahmed M. decision, the court there noted that every judge in the District of Minnesota had concluded that § 1226(a)'s discretionary regime applied to cases like the one before this Court today. See Ahmed M., 2026 WL 25627, at *1.

R.E. v. Bondi, No. 25-cv-3946, 2025 WL 3146312, at *2–3 (D. Minn. Nov. 4, 2025) (Brasel, J.); Belsai D.S. v. Bondi, No. 25-cv-3682, 2025 WL 2802947, at *5–7 (D. Minn. Oct. 1, 2025) (Menendez, J.); Eliseo A.A. v. Olson, --- F. Supp. 3d ---, No. 25-cv-3381, 2025 WL 2886729, at *2–4 (D. Minn. Oct. 8, 2025) (Blackwell, J.); Francisco T. v. Bondi, No. 25-cv-3219, 2025 WL 3236513, at *2–3 (D. Minn. Nov. 19, 2025) (Bryan, J.); Fuentes v. Olson, No. 25-CV-4456, 2025 WL 3524455, at *3–4 (D. Minn. Dec. 9, 2025) (Provinzino, J.); Velasco Hurtado v. Bondi, No. 0:26-CV-546, 2026 WL 184884, at *5 (D. Minn. Jan. 24, 2026) (Gerrard, J., sitting by designation); Elder Roel L.G. v. Bondi, No. 0:26-cv-01507, Doc. 6 at 3–4 (Locher, J., sitting by designation); Carlos A. v. Bondi, No. 0:26-cv-00580, Doc. 12 (Bough, J., sitting by designation). Since the Fifth Circuit's decision in Buenrostro-Mendez, District of Minnesota judges have continued to find that noncitizens already living in the country are subject to discretionary detention under § 1226. See Carlos D. v. Bondi, No. 26-CV-1666, 2026 WL 636685, at *2 (D. Minn. Mar. 6, 2026) (Tostrud, J.); Jose C-S v. Bondi, No. 26-CV-1460, 2026 WL 457336, at *1–2 (D. Minn. Feb. 18, 2026) (Menendez, J.). Two senior status Minnesota district judges handling many of the § 2241 petitions have likewise held that § 1226(a) governs the detention of noncitizens like Esli D. B.G. Avila v. Bondi, No. 25-cv-3741, 2025 WL 2976539, at *5–7 (D. Minn. Oct. 21, 2025) (Tunheim, J.); E.M. v. Noem, No. 25-cv-3975, 2025 WL 3157839, at *2–8 (D. Minn. Nov. 12, 2025) (Nelson, J.); Hector C., v. Lyons, No. 26-CV-1599, 2026 WL 560206, at *3 (D. Minn. Feb. 27, 2026) (Nelson, J.) (rejecting argument in Buenrostro-Mendez). But see Byron A. v. Bondi, No. 26-1365, 2026 WL 608535, at *2–3 (D. Minn. Mar. 4, 2026) (Magnuson, J.).

In response to this Court's second question, Respondents argue that arresting Esli D. B.G. without a warrant does not void mandatory custody under Ahmed M. Doc. 8 at 7–8. They first argue that Esli D. B.G.'s detention is under § 1225(b)(2)(A), where no warrant is required. Id. at

8. They next argue that even assuming § 1226(a) applies to Esli D. B.G.'s detention, a conclusion "that a defective warrant," or here, no warrant, "necessitates immediate release [] conflicts directly with constitutional law and binding Eighth Circuit precedent." Id. at 9.  Finally, Respondents request that even if this Court were to apply § 1226(a), the proper remedy is a bond hearing, not release. See id. at 9.

## II.    Discussion

A writ of habeas corpus enables a person detained by the government to challenge the legality of the confinement and, if successful, obtain release. Preiser v. Rodriguez, 411 U.S. 475, 485 (1973).  Habeas corpus relief under 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detention, Zadvydas v. Davis, 533 U.S. 678, 687 (2001), but a court's jurisdiction to hear such claims is limited, see 8 U.S.C. § 1226(e); Demore v. Kim, 538 U.S. 510, 516–17 (2003).

### A. Applicable Provision of the Immigration and Nationality Act

This Petition presents a question of law.  The parties dispute whether 8 U.S.C. § 1225(b)(2) or § 1226(a) applies to a noncitizen, like Esli D. B.G., who is already residing in the United States. There is no factual dispute that Esli D. B.G. has no criminal history, Esli D. B.G. was arrested while already residing in the United States, and the ICE agents arresting him did not possess a warrant authorizing that arrest.  No evidentiary hearing is required as entitlement to relief turns on a pure question of law.

Section 1225(b)(2)(A) mandates detention "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Meanwhile, 8 U.S.C. § 1226(a) provides that "[o]n a warrant issued by the Attorney General," the government may arrest and detain a noncitizen "pending a decision on whether the

7

alien is to be removed from the United States." 8 U.S.C. § 1226(a). Detention under § 1226(a) may or may not be mandatory depending on factors including, but not limited to, the noncitizen's criminal behavior under § 1226(c). See Demore, 538 U.S. at 517–18 ("Section 1226(c) mandates detention during removal proceedings for a limited class of deportable aliens—including those convicted of an aggravated felony."). In Jennings v. Rodriguez, the Supreme Court summarized the relevant statutory scheme and recognized the difference between §§ 1225 and 1226 as the following: "U.S. immigration law authorizes the Government to detain certain *aliens seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain *aliens already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." 583 U.S. 281, 289 (2018) (emphasis added).

The overwhelming majority of district courts to consider this issue and in passing the Seventh Circuit Court of Appeals—one of only two circuit courts as yet to address the issue[4]—have held that the applicable detention scheme for noncitizens who are already residing in the country is the one under § 1226(a), absent any exceptions under § 1226(c).[5] See, e.g., Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060–62 (7th Cir. 2025); Barco Mercado v. Francis, No. 25-CV-6582, 2025 WL 3295903, at *4, nn. 22–23 (S.D.N.Y. Nov. 26, 2025) (collecting 362 federal decisions by over 160 different judges sitting in roughly 50 different courts, 350 of which determined that § 1226(a) is the applicable detention scheme for noncitizens already residing in the country); Maldonado, 795 F. Supp. 3d 1134; E.M., 2025 WL 3157839; see also Demirel v. Fed. Det. Ctr., No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025)

---

[4] This statutory interpretation issue is currently pending before the United States Court of Appeals for the Eighth Circuit. See Avila v. Bondi, No. 25-3248 (8th Cir.).

[5] Respondents do not assert that any of the exceptions listed under § 1226(c) justify mandatory detention apply to Esli D. B.G.

(collecting cases); Reyes v. Raycraft, No. 25-12546, 2025 WL 2609425, at *6–7 (E.D. Mich. Sep. 9, 2025) (collecting cases); Yulexi T. v. Noem, No. 26-cv-68, 2026 WL 77022, at *2 (D. Minn. Jan. 10, 2026); Kelvin N. v. Bondi, No. 26-CV-32, 2026 WL 63423, at *2–3 (D. Minn. Jan. 8, 2026); Iishaar-Abdi v. Klang, No. 25-4686, 2025 WL 3764853, at *1 (D. Minn. Dec. 30, 2025); Awaale v. Noem, No. 25-04551, 2025 WL 3754012, at *1 (D. Minn. Dec. 29, 2025); Hugo v. Olson, No. 25-cv-4593, 2025 WL 3688074, at *2–3 (D. Minn. Dec. 19, 2025); Leonel V.F. v. Bondi, No. 25-cv-4474, 2025 WL 3485600, at *1 (D. Minn. Dec. 4, 2025). These decisions have interpreted § 1225(b)(2) to apply to noncitizens at or near the border. See, e.g., Ortiz, 808 F. Supp. 3d at 593.

These courts have relied on the plain meaning of these two provisions as well as past interpretations of those provisions by the Supreme Court, DHS, ICE, and the Department of Justice (DOJ). Courts have understood an "alien seeking admission," who is subject to the mandatory detention scheme under § 1225(b), as someone "seeking physical entry at the border, not the legal right to enter." See, e.g., Ortiz, 808 F. Supp. 3d at 592 (footnote omitted)[6]; Barco Mercado, 2025

---

[6] The court in Ortiz supported this interpretation by reading in the context of the other subparagraphs in § 1225(b)(2):

Subparagraph (B) provides that section 1225(b)(2)(A) "shall not apply to an alien . . . . who is a crewman" or "who is a stowaway." 8 U.S.C. § 1225(b)(2)(B). And subparagraph (C) states that "[i]n the case of an alien described in subparagraph (A) who is *arriving on land* (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title." Id. § 1225(b)(2)(C) (emphasis added). The fact that these carve-outs involve various means of arriving in the United States suggests "that the category of applicants for admission covered by [section] 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering—not those in [Alvarez Ortiz's] circumstances."

9

WL 3295903, at *4–5 ("But the language of Section 235(b)(2)(A) makes clear that it applies *only* if three criteria are met[:] The noncitizen must be (i) an 'applicant for admission,' (ii) 'seeking admission,' and (iii) 'not clearly and beyond a doubt entitled to be admitted' . . . . [T]he phrase 'seeking admission' 'necessarily implies some sort of present-tense action.'" (citation omitted)). In contrast, a noncitizen already present and residing in the United States who entered the country years ago cannot be said to be "an alien seeking admission." See Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025). "And such a noncitizen certainly is not seeking *entry after inspection and authorization by an immigration officer,*" as described in § 1225(b). Barco Mercado, 2025 WL 3295903, at *5. Therefore, noncitizens already present in the United States are subject instead to the broader, discretionary detention scheme in § 1226(a). See id. (noting § 1226(a) "allows the immigration authorities to detain or release 'an alien'—any alien— 'pending a decision on whether the alien is to be removed.'" (quoting 8 U.S.C. § 1226(a)).

This understanding squares with the distinction the Supreme Court drew in Jennings, where it referred to § 1225 as applying to "aliens seeking admission into the country" and to § 1226 as applying to "aliens already in the country." 583 U.S. at 289. Until at least July of 2025, this was how DHS, ICE, and DOJ understood the statute as well. Ortiz, 808 F. Supp. 3d at 595 (noting "the Court's reading of the statutes has been DHS's and ICE's reading for many years" (citing Guerrero Orellana v. Moniz, 802 F. Supp. 3d 297, 310–11 (D. Mass. 2025); Hasan v. Crawford, 800 F. Supp. 3d 641, 657–58 (E.D. Va. 2025); Lopez Benitez, 795 F. Supp. 3d 475)); Santos M.C., 2025 WL 3281787, at *3 ("As an initial matter, the Court notes again that, until October 2025, the government consistently took the position that Santos [a noncitizen living in the United States

---

Ortiz, 808 F. Supp. 3d at 592 (quoting Hyppolite v. Noem, 808 F. Supp. 3d 474, 487 (E.D.N.Y. 2025)).

since 2009] was *not* subject to mandatory detention under § 1225(b)(2)."); <u>Detention and Removal of Noncitizens</u>, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (stating that "aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination").

In addition, in 2025, Congress through the Laken Riley Act amended § 1226(c) to mandate detention for noncitizens who "while living in the United States, have been arrested for, charged with, or convicted of certain crimes." <u>Santos M.C.</u>, 2025 WL 3281787, at *3 (citing 8 U.S.C. § 1226(c)(1)(E)). This modification would have been completely unnecessary if the government is correct that § 1225(b) mandates detention for all noncitizens like Esli D. B.G. As many courts have noted, the government's proposed reading of § 1225(b) would render § 1226(c) superfluous because, "[a]ccording to the government, [] *every* alien present in the United States was already subject to mandatory detention under § 1225(a)(1)." <u>Id.</u>; <u>see also</u> <u>Maldonado</u>, 795 F. Supp. 3d at 1151–52 ("Here, the presumption against superfluity is at its strongest because the Court is interpreting two parts of the same statutory scheme, and Congress even amended the statutory scheme this year when it passed the Laken Riley Act."). The presumption against superfluity, or the "Surplusage Canon," requires that, "[i]f possible, every word and every provision is to be given effect . . . . None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 174 (2012). Further, "[b]ecause legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant." <u>Id.</u> at 176.

The Fifth Circuit and a few district court decisions have adopted the government's statutory interpretation of § 1225(b)(2) to mandate detention even for noncitizens like Esli D. B.G., who have been residing in the country, quixotically deeming those noncitizens long in the United States

11

as "seeking admission." Buenrostro-Mendez, 166 F.4th at 502 ("While they remain applicants, they are presently seeking admission."). The Fifth Circuit's reasoning rationalized ignoring § 1226. Id. at 503 ("To the extent that the government's interpretation creates any redundancy between these terms, that redundancy does not give this court a license to rewrite . . . another portion of the statute contrary to its text." (cleaned up and citation omitted)). The Fifth Circuit gave little attention to the Supreme Court's statements in Jennings on the difference between § 1225 and § 1226. Id. at 505 (determining the citation to Jennings is unpersuasive in part because "[a]t most, the language petitioners cite is dicta" and does not refute the government's interpretations because § 1225 and § 1226 can both apply to noncitizens already present in the country). And the Fifth Circuit ascribed no weight to the traditional understanding of § 1225 and § 1226. Id. at 506 (rejecting petitioners' argument citing twenty-nine years of government past practice because "the government's past practice has little to do with the statute's text"). The reasoning in Buenrostro-Mendez has persuaded some district courts to deem the mandatory detention provision of § 1225 to extend to noncitizens already in the United States as well as to those newly seeking admission. See, e.g., Humberto Geovani D.A., No. 0:26-cv-01597, Doc. 8 at 4 (citing generally Buenrostro-Mendez, 166 F.4th 494).

The Buenrostro-Mendez decision and its progeny focus on § 1225(b)(2) and interpret a noncitizen "seeking admission" so broadly as to largely read § 1226 to cabin its application to noncitizens overstaying a visa or who were erroneously admitted. Buenrostro-Mendez, 166 F.4th at 499, 505. Section 1226 does not read that way, nor did the Supreme Court in Jennings in 2018 read § 1225 and § 1226 in that manner. Section 1225(b)(2) does not render the bulk of § 1226(a) to be superfluous. Congress in 2025 passed the Laken Riley Act to revise § 1226 to extend the mandatory detention for noncitizens living in the United States, so Congress understood just last

12

year that § 1225 does not render § 1226 to be superfluous.  There unquestionably is a type of noncitizen—like Esli D. B.G. who has lived for 20 years in the United States with a U.S. citizen wife and U.S. citizen children—who is not "seeking admission."  As one judge has reasoned, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater.  Rather, that person would be described as already present there." Lopez Benitez, 795 F. Supp. 3d at 489.  The better reading of these two statutes—and by far the majority view— differentiates them, with § 1225 applying to those "seeking admission" as new entrants and § 1226 applying to people already residing in the United States like Esli D. B.G.  See Barco Mercado v. Francis, 2025 WL 3295903, at *4–6 (concluding that respondents' argument that § 1225(b)(2) justified detention of a noncitizen who had been residing in the United States for three years "is contradicted by the ordinary meaning of the statutory text"); Ortiz, 808 F. Supp. 3d at 595; Detention and Removal of Noncitizens, 62 Fed. Reg. at 10323.

### B. Appropriate Remedy

Because § 1225(b) is not applicable to Esli D. B.G., but § 1226(a) is, this Court now turns to the appropriate remedy.  Under § 1226(a), a noncitizen may be arrested and detained pending a decision on removal "[o]n a warrant issued by the Attorney General."  8 U.S.C. § 1226(a).  Therefore, "[t]he statute requires the issuance of a warrant as a precursor to detention under § 1226(a)." Juan R. v. Bondi, No. 26-CV-252, 2026 WL 125255, at *2 (D. Minn. Jan. 16, 2026) (citing Ahmed M., 2026 WL 25627, at *3; J.A.C.P. v. Wofford, No. 1:25-cv-01354, 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025)).  "As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." Chogllo Chafla v. Scott, 804 F. Supp. 3d 247, 264 (D. Me. 2025).  When the government does "not comply with the plain language of

13

section 1226(a), [a petitioner's] immediate release is justified." Id.; see also Munaf v. Geren, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." (internal citation omitted)).

The record reflects that Respondents had no warrant to arrest Esli D. B.G. Respondents themselves refer to the encounter as a "warrantless field arrest." See Doc. 9-1; Doc. 8 at 8. Although Respondents offer a series of arguments that the absence of a warrant to arrest Esli D. B.G. should not invalidate Esli D. B.G.'s detention, they fail to engage meaningfully with their statutory obligations under § 1226(a) to obtain a warrant *before* detaining Esli D. B.G. In line with other district courts to have considered this issue, this Court finds that Esli D. B.G.'s arrest and detention are therefore unauthorized, and the appropriate remedy for detention that lacks a proper statutory basis under § 1226(a) is release. See, e.g., Juan R, 2026 WL 125255, at *2; Ahmed M., 2026 WL 25627, at *3; Juan S.R. v. Bondi, No. 26-cv-0005, Doc. 8 at 3–4 (D. Minn. Jan. 12, 2026) (following the reasoning of Ahmed M. and ordering immediate release where Respondents failed to present evidence of a warrant); Vedat C. v. Bondi, No. 25-cv-4642, Doc. 9 at 6 (D. Minn. Dec. 19, 2025) ("[A] bond hearing presupposes lawful detention authority under § 1226. Where that authority has not been invoked or established, ordering a bond hearing would treat the absence of statutory power as a mere procedural irregularity rather than a substantive defect."). See also Jose J.O.E., 797 F. Supp. 3d at 969–70 (ordering respondents to provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) where petitioner was arrested on a warrant).

### III.    Conclusion

For the foregoing reasons, it is hereby

ORDERED that Petitioner Esli D. B.G.'s Petition for a Writ of Habeas Corpus, Doc. 1, is granted. It is further

14

ORDERED that this Court declares that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b).  It is further

ORDERED that Respondents shall release Petitioner from custody immediately, but no later than within 48 hours of entry of this Order.  It is further

ORDERED that upon Petitioner's release, Respondents must return to Petitioner any personal property, including personal identification documents. It is further

ORDERED that Respondents shall confirm Petitioner's release within 48 hours from the date of this Order.  It is further

ORDERED that if Respondents re-arrest Petitioner, absent materially changed circumstances, they must do so with a warrant under § 1226(a) and provide a timely bond hearing.

DATED this 16th day of March, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE